IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MILTON TILLMAN,

    *Petitioner*,

    v.                                   Civil Action No. ELH-13-2413

UNITED STATES OF AMERICA,

    *Respondent*.

## MEMORANDUM OPINION

Milton Tillman, petitioner, has filed a Petition To Quash Summonses (ECF 1, the "Petition to Quash" or "Pet."), in which he challenges two third-party administrative summonses issued by the Internal Revenue Service ("IRS"). *Id.* ¶ 1. The summonses pertain to an investigation led by IRS Revenue Agent Carla Johnson with respect to petitioner's civil tax liability for the calendar years 2006 through 2010, in which he allegedly failed to file tax returns. *See* Declaration of Carla Johnson, September 9, 2013, ECF 6-1 ¶ 2. The investigation follows Tillman's federal convictions in 2010 for submitting a false tax return, unlawfully engaging in the insurance business, and wire fraud. *See United States v. Tillman et al.*, Criminal Case No. CCB-10-cr-00067 (D. Md.). Respondent, the United States (the "Government"), has filed an Opposition To Petition To Quash And Motion To Enforce Internal Revenue Service Summons (ECF 6, "Motion to Enforce").[1]

No hearing is necessary to resolve the matter. *See* Local Rule 105.6. For the reasons that follow, I will deny the Petition to Quash and grant the Motion to Enforce.

---

[1] Petitioner did not file a response to the Government's Motion to Enforce.

## I. Legal Standards

The third-party administrative summonses were issued on July 29, 2013, to Provident Bank[2] and SunTrust Bank, pursuant to 26 U.S.C. § 7602.  *See* ECF 6-2 (summons issued to Provident Bank) and ECF 6-3 (summons issued to SunTrust Bank).  Section 7602 authorizes the IRS to issue summonses to third parties for documentary production "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability," *id.* § 7602(a), and for "the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws." *Id.* § 7602(b).

Courts must examine the validity of administrative summonses of the sort that petitioner challenges here, because "it is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *United States v. Powell*, 379 U.S. 48, 58 (1965); *accord Xélan, Inc. v. United States*, 361 F. Supp. 2d 459, 463 (D. Md. 2005). Pursuant to 26 U.S.C. § 7609(h), this Court has jurisdiction to resolve this dispute. *See Xélan, Inc.*, 361 F. Supp. 2d at 461.

In *Alphin v. United States*, 809 F.2d 236 (4th Cir.), *cert. denied*, 480 U.S. 935 (1987), the Fourth Circuit observed that, pursuant to the Supreme Court's decision in *Powell*, the IRS's exercise of its summons power "is limited to the purposes established in § 7602," and "may not be used for improper purposes, 'such as to harass the taxpayer or to put pressure on him to settle

---

[2] Although neither party addresses the issue, it appears that Provident Bank no longer operates under that name, following its acquisition by M&T Bank.  *See generally* Binyamin Appelbaum, *M&T Agrees to Buy Provident Bank*, WASH. POST, December 20, 2008, http://www.washingtonpost.com/wp-dyn/content/article/2008/12/19/AR2008121901016.html.

a collateral dispute.'"  *Alphin*, 809 F.2d at 237-38 (quoting *Powell*, 379 U.S. at 58).   In a proceeding to quash an IRS summons under § 7609, the burden is on the government to "show that its summons authority is being used in good faith pursuit of [the statutory] purposes." *Alphin*, 809 F.2d at 238.

The government meets this burden initially by establishing a "prima facie case," consisting of four elements as articulated by the Supreme Court in *Powell*: "1) the investigation is being conducted for a legitimate purpose; 2) the inquiry is relevant to that purpose; 3) the information sought is not already in the possession of the IRS; and 4) the administrative steps required by the Code have been followed."  *Id.* (citing *Powell*, 379 U.S. at 57-58); *accord Conner v. United States*, 434 F.3d 676, 680 (4th Cir. 2006).  "The government's burden is fairly slight" and can be satisfied "by an affidavit of an agent involved in the investigation averring the *Powell* good faith elements."  *Alphin*, 809 F.2d at 238; *see also Conner*, 434 F.3d at 680  ("The burden on the government to produce a *prima facie* showing of good faith in issuing the summons is 'slight or minimal.'") (citation omitted).

"Once the government has made its prima facie case, the burden shifts to the party challenging the summons to show that enforcement would be an abuse of the court's process." *Alphin*, 809 F.2d at 238.  This burden is "heavy," because it requires the challenger to prove a negative: the challenger must "disprov[e] the actual existence of a valid civil tax determination or collection purpose."  *Id.* (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978)).

The district court ordinarily "'should dispose of the proceeding on the papers before it . . . without an evidentiary hearing'" and without "allow[ing] discovery," unless the "the party

challenging the summons . . . allege[s] specific facts in its responsive pleadings, supported by affidavits, from which the court can infer a possibility of some wrongful conduct by the IRS." *Alphin*, 809 F.2d at 238 (citation omitted); *see also Conner*, 434 F.3d at 682. "'Mere allegations of bad faith will not suffice'" to make the required "preliminary demonstration of abuse." *Alphin*, 809 F.2d at 238 (citation omitted); *see also Bell v. United States*, 521 F. Supp. 2d 456, 460 (D. Md. 2007) (rejecting the petitioner's claim that administrative steps were not fulfilled, where the petitioner alleged that the Government failed to comply with notification requirements but "provide[d] no evidence to support this allegation").

Section 7602 specifically prohibits the issuance of a summons "if a Justice Department referral is in effect" with respect to the person about whom records are sought. *Id.* § 7602(d). The phrase "Justice Department referral" encompasses two scenarios: (1) where the Treasury "has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, [the] person [at issue] for any offense connected with the administration or enforcement of the internal revenue laws"; or (2) where the Justice Department has, in the course of its own investigation, requested disclosure by the Treasury of a "tax return or tax return information" regarding the person at issue. *Id.* § 7602(d)(2)(A)(i)-(ii).

The prohibition in § 7602(d) represents the legislative "codifi[cation of] the essence" of the Supreme Court's holding in *LaSalle Nat'l Bank*, 437 U.S. 298, to the effect that "the IRS may not issue a summons once it has recommended prosecution to the Justice Department . . . ." *United States v. Stuart*, 489 U.S. 353, 362-63 (1989) (citing *LaSalle* and discussing post-*LaSalle* enactment of provision now codified as § 7602(d), then codified as § 7602(c)). The rationale of this rule is that the IRS should not be permitted "to become an information-gathering agency for

other departments, including the Department of Justice," *LaSalle*, 437 U.S. at 317, thereby effectively "broaden[ing] the Justice Department's right of criminal litigation discovery or . . . infring[ing] on the role of the grand jury as a principal tool of criminal accusation." *Id.* at 312; *accord Stuart*, 489 U.S. at 363.

Section 7602 also identifies, in a section titled "Termination," several situations in which a "Justice Department referral shall cease to be in effect with respect to a person[.]" 26 U.S.C. § 7602(d)(2)(B). Among other situations, termination has occurred when "a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person . . . ." *Id.* § 7602(d)(2)(B)(ii). Notably, "each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately." *Id.* § 7602(d)(3).

## II.  Discussion

To establish its *prima facie* case, the Government has submitted the Declaration of IRS Revenue Agent Carla Johnson. *See* ECF 6-1 ("Johnson Declaration" or "Johnson Decl.," dated September 9, 2013). Agent Johnson is conducting an investigation regarding Tillman's tax liability for the calendar years 2006 through 2010, "because he did not file tax returns for those years[.]" Johnson Decl. ¶ 2. Those five particular years "were selected for examination following the conclusion of [petitioner's] criminal case." *Id.*; *see also infra* (discussing prior criminal case).

The third-party administrative summonses to Provident Bank and SunTrust Bank seek all records pertaining to petitioner dating from December 1, 2005, through January 31, 2011. Johnson Decl. ¶¶ 3-4, 7-8; *see* ECF 6-2 (the "Provident Summons") and ECF 6-3 (the "SunTrust

Summons").  Specifically, the two summonses sought "testimony" as well as the production of "books, papers, records, or other data" identified in the summonses.  *See* Johnson Decl. ¶¶ 3, 7. At that time, Agent Johnson also served petitioner with notices of the Provident Summons and the SunTrust Summons, as required by 26 U.S.C. § 7609(a).  *See id.* ¶¶ 5, 9.

Agent Johnson averred that "[t]he books, papers, records, or other data sought by the summons are not, to [her] knowledge, already in the possession of the Internal Revenue Service."  Johnson Decl. ¶ 11.  She added: "Any prior tax determination would have been completed as part of a grand jury indictment and any documents used in that determination would not be accessible for use in [her] civil investigation."  *Id.* ¶ 11.

According to Agent Johnson, "[a]ll administrative steps required by the Internal Revenue Code for issuance of a summons have been taken."  Johnson Decl. ¶ 12.  Those actions included initial contact with petitioner via letter on April 11, 2013, which advised him that "contact with a third-party record keeper may be necessary should the taxpayer be unable to provide information requested."  *Id.* ¶ 12a.  At that time, an Information Document Request was also submitted to petitioner, "requesting bank statements for December 2005 through January 2011," with the requested documents due May 6, 2013.  *Id.* ¶ 12b.  Agent Johnson also contacted petitioner via telephone on May 6, 2013, at which time petitioner "stated that he tried to prepare his taxes but he could not get them done because he was incarcerated," and added that an attorney was handling his tax matters.  Petitioner was advised that Agent Johnson "cannot contact his lawyer for information relating to his taxes and unfiled tax returns for 2007, 2008, 2009, and 2010" without valid authorization.  Petitioner "stated that he would have his lawyer get in touch with [Agent Johnson] to provide requested information."  *Id.* ¶ 12c.  However, "[b]y the date of the

issuance of the administrative summons, the bank statements requested" for calendar years 2006 through 2010 had not been provided by either petitioner or his lawyer. *Id.* ¶ 12d.[3]

In my view, the Government has made a *prima facie* showing that the two administrative summonses were issued in good faith. *See Alphin*, 809 F.2d at 238; *see also Conner*, 434 F.3d at 680. The burden therefore shifts to petitioner, who must establish that enforcement of the summonses would amount to an abuse of the Court's process. *See Alphin*, 809 F.2d at 238.

In his Petition to Quash challenging the two summonses, Tillman maintains that, "[u]pon information and belief," the Provident Summons and SunTrust Summons "were not issued in good faith" and thus "violat[ed] the standards set forth in [*Powell*] regarding the good faith standards the IRS must meet when issuing third party administrative summonses." Pet. ¶ 9. However, the arguments raised in the Petition to Quash are unconvincing.

Petitioner argues that "the information being sought is already in the possession of the IRS." In support of that claim, Tillman notes that, on February 23, 2010, he "was charged in a multiple count indictment with a number of tax code violations covering several Calendar Years back to 2002." Pet. ¶ 10a (citing *United States v. Tillman et al.*, Criminal Case No. CCB-10-cr-00067 (D. Md.)). On December 22, 2010, petitioner pleaded guilty to submitting a false tax return as well as two other criminal charges, and he was sentenced on July 14, 2011. Pet. ¶ 10b. According to petitioner, in connection with his criminal case, "upon information and belief, the IRS obtained and reviewed Petitioner's bank records for the Calendar Years covered by the administrative summonses." Pet. ¶ 10d.[4]

---

[3] The Petition to Quash does not challenge the adequacy of these administrative steps.

[4] Petitioner does not challenge the summonses on the ground that "a Justice Department referral is in effect[.]" *See* 26 U.S.C. § 7602(d). A referral is deemed to be terminated where,

As noted, one element of the Government's *prima facie* case requires a showing that "the information sought is not already in the possession of the IRS[.]" *Alphin*, 809 F.2d at 238 (citing *Powell*, 379 U.S. at 57-58).[5]

In its Opposition, the Government maintains that "the information sought is not already in the [IRS]'s possession."  Opp. at 4.  Further, it observes: "Although the requested bank records may have been acquired during the prosecution of Petitioner's criminal case, any documents received were part of the grand jury indictment and are not accessible to Agent

---

*inter alia*, "a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person . . . ."  *Id.* § 7602(d)(2)(B)(ii).  Although the term "final disposition" is not defined in the statute, the plain language suggests that, where petitioner has been sentenced and no appeal or other proceedings are alleged to be pending, the "Justice Department referral" with respect to petitioner would have terminated by the time the two relevant summonses were issued in July 2013.  *See also Stuart v. United States*, 1984 WL 835, at *3 (E.D. Ark. June 22, 1984) (finding that petitioner's Justice Department referral had terminated at the conclusion of the direct appeal in petitioner's prior criminal case, even though he continued to serve his sentence at the time a subsequent IRS summons was issued).  In any event, this is not an argument that petitioner has pursued.

[5] Although not directly relevant here, it is noteworthy that courts have recognized several caveats to the general principle that the IRS cannot seek information already in its possession. *See, e.g., Connor*, 434 F.3d at 681 ("[T]he Fourth Circuit has held in applying this prong that, when the government has grounds to suspect alteration of a taxpayer's financial records, it has the right to obtain the same records from different sources for comparison purposes."); *Spell v. United States*, 907 F.2d 36, 38 (4th Cir. 1990) ("Here, as in *Powell*, the taxpayer may not refuse to produce records in response to a subpoena by an IRS special agent merely because his returns have been once previously examined."); *see also Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 350 (1st Cir. 2009) ("[T]he IRS is entitled to obtain relevant records from third parties to compare for accuracy any records obtained from the taxpayer."); *United States v. Insurance Consultants of Knox, Inc.*, 187 F.3d 755, 760 (7th Cir. 1999) ("The Supreme Court clearly held in *Powell* that the showing of abuse of process necessary to quash an administrative summons must be 'predicated on more than the fact of re-examination.'  379 U.S. at 51[.]  Even if the IRS had requested only copies of [certain] corporate tax returns, they would not be precluded from demanding these again."); *United States v. Davis*, 636 F.2d 1028, 1038 (5th Cir. 1981) (enforcement of summons is permissible under *Powell* "[w]hen a summons as a whole is not harassing, when the bulk of the materials summoned is not demonstrably in the possession of the IRS, and where the marginal burden of supplying information which might already be in the possession of the IRS is small").

Johnson during her civil audit." *Id.* (citing Johnson Decl. ¶ 11).  As such, "for purposes of [the] audit, the documents are not considered to be in the [IRS]'s possession."   Opp. at 4.[6] Specifically, Agent Johnson avers in her Declaration, ¶ 11:

> The books, papers, records, or other data sought by the summonses are not, to my knowledge, already in the possession of the Internal Revenue Service.  Any prior tax determination would have been completed as part of a grand jury indictment and any documents used in that determination would not be accessible for use in my civil investigation.

Agent Johnson's representation that the requested materials are not in the possession of the IRS is sufficient to meet the Government's burden to make a *prima facie* showing.  *See Connor*, 434 F.3d at 681 ("Because the government had already produced Special Agent Pierson's affidavit disavowing possession of the documents sought in the summonses at issue, [the petitioner] bore the burden of proving otherwise."); *Putnam v. United States*, 2009 WL 2447944, at *2 (D. Md. Aug. 4, 2009) ("The affidavit of the issuing agent is sufficient to establish that the IRS does not possess the requested documents.") (citing *Connor*).[7]  As such, the burden shifts to petitioner to disprove the *prima facie* showing.  *See Connor*, 434 F.3d at 681; *Xélan, Inc.*, 361 F. Supp. 2d at 466 ("As the IRS has met its burden with regard to this prong of

---

[6] The Government notes that "although SunTrust mailed an envelope to Agent Johnson in response to the summons that presumably contains the requested bank records, the envelope remains sealed as a result of" the filing of the Petition to Quash.  Opp. at 4.  Petitioner's argument does not pertain to the information submitted by SunTrust Bank in response to the summons; rather, it relates to information purported to be in the IRS's possession prior to the issuance of the summonses.

[7] The IRS does not gain automatic access to documents simply because those documents were at one time in the possession of a grand jury.  *See, e.g., United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414-15 (9th Cir. 1993) (affirming denial of petition to quash administrative summonses, where IRS sought petitioners' materials that were previously submitted to a grand jury and that "remained in the custody of the United States Attorney as custodian of the grand jury").  Indeed, if the IRS had such access, "enforcement of the summonses would be unnecessary." *See id.* at 1414.

*Powell*, xélan must offer persuasive competing evidence that the IRS does in fact have these documents already.").

In the Petition to Quash, Tillman offers no basis for the conclusion, pleaded "upon information and belief," that the IRS had previously "obtained and reviewed Petitioner's bank records for the Calendar Years covered by the administrative summonses." *See* Pet. ¶ 10d.  In my view, petitioner falls far short of meeting his burden to refute the allegations found in the Johnson Declaration.  *See Alphin*, 809 F.2d at 238; *see also, e.g.*, *Gjerde v. United States*, 2012 WL 3528144, at *4 (E.D. Cal. Aug. 14, 2012) (rejecting a petitioner's assertions that IRS already possessed materials sought in the summonses at issue, as petitioner's allegations were "not supported by any specific facts or evidence, and [we]re contradicted by [the IRS agent's] declaration."); *Maehr v. United States*, 2008 WL 2705605, at *2 (W.D.N.C. July 10, 2008) ("Additionally, notwithstanding the degree to which the IRS has access to Social Security Administration records and other relevant income information pertaining to Petitioner, he has not shown that the IRS has possession of the specific information sought under the subpoena here.").

In connection with Tillman's challenge to both summonses, he observes that "the IRS may not issue an administrative summons unless its 'investigation is being conducted for a legitimate purpose; . . . [and] the inquiry is relevant to that purpose.'"  Pet. ¶ 11 (quoting *Connor*, 434 F.3d at 680).  He avers that, in connection with his criminal matter, "Petitioner negotiated with the government for the payment of restitution in an amount which should have covered and did cover Petitioner's tax liabilities up to the date of sentencing inclusive of the Calendar Years in question."  *Id.* ¶ 11a; *see also id.* ¶ 10c (asserting that "Petitioner's sentence included an order of restitution, for an amount negotiated with the Government, which was intended to cover

Petitioner's tax liabilities up to the date of sentencing").  In petitioner's view, "[t]he restitution order renders moot any issues concerning Petitioner's tax liability for those years."  *Id.* ¶ 11b.  As such, petitioner maintains, "it is not likely or plausible that the pending administrative investigation is legitimate, or that the inquiry into his bank records has a legitimate purpose."  *Id.* ¶ 11c.  Conspicuously absent from petitioner's filing is any quotation from a plea agreement, restitution order, or other relevant document from his criminal case, or copies of those documents.  Nor does he specify the amount of the restitution that he claims to have paid to the IRS to fulfill his tax obligations.

As noted, Agent Johnson stated in her Declaration that she is conducting an investigation regarding petitioner's tax liability for the calendar years 2006 through 2010, "because he did not file tax returns for those years[.]"  Johnson Decl. ¶ 2.  Those five particular years "were selected for examination following the conclusion of [petitioner's] criminal case."  *Id.*  Agent Johnson's statements are sufficient to meet the Government's *prima facie* case, under which it must show that "the investigation is being conducted for a legitimate purpose" and that "the inquiry is relevant to that purpose."  *Alphin*, 809 F.2d at 238; *see Conner*, 434 F.3d at 680; *Putnam*, 2009 WL 2447944, at *1 ("Proper purposes include verifying the correctness of the taxpayer's tax return, determining the taxpayer's liabilities, preparing tax returns if the taxpayer did not file them where he is required to by law, and locating assets to satisfy an unpaid tax liability.").

Because the Government has made a *prima facia* showing, petitioner bears a "heavy burden of disproving the actual existence of a valid civil tax determination or collection purpose."  *Alphin*, 809 F.2d at 238 (citing *LaSalle Nat'l Bank*, 437 U.S. at 316).  Indeed, "[i]n order to be entitled to a hearing, the party challenging the summons must allege specific facts in

its responsive pleadings, supported by affidavits, from which the court can infer a possibility of some wrongful conduct by the IRS." *Alphin*, 809 F.2d at 238. Petitioner has not done so. Rather, he has offered bald assertions, unsupported by any documentation or other materials, that the tax liability at issue in Agent Johnson's investigation was resolved in connection with his prior criminal case. Such assertions are insufficient to trigger a hearing, much less require the Court to quash two otherwise valid administrative summonses.

It is also worth observing that, although the Johnson Declaration does not address the terms of petitioner's guilty plea or any associated restitution order, the Government's Opposition indicates that the restitution of $120,000 ordered in petitioner's criminal case was owed to Ports America Baltimore, Inc., and not to the IRS. *See* Opp. at 1-2. The Government further avers that petitioner's plea agreement "did not resolve any civil tax liability that Petitioner may have" and provided only that petitioner would "'use his best effort' to secure a Closing Agreement" with the IRS that would resolve his tax liabilities for the period of 2002 to 2006. *Id*. at 2. According to the Government, such a Closing Agreement was never concluded. *Id.* Nevertheless, the Government did not attach petitioner's plea agreement to the Johnson Declaration, nor did either party suggest that the plea agreement or other documents relevant to determining the purpose and effect of the restitution order are materials of which this Court may take judicial notice.[8]

---

[8] Judicial notice of the terms of petitioner's plea agreement and the judgment may well be warranted. *See, e.g.*, *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."); *Drubetskoy v. Wells Fargo Bank, N.A.*, 2013 WL 6839508, at *2 (D. Md. Dec. 20, 2013) (taking judicial notice of plea agreement evidencing the plaintiff's criminal conviction, because it "is a matter of public record, as it was filed in open court"); *see also Person v. Miller*, 854 F.2d 656, 660 (4th Cir. 1988).

To the extent it would be appropriate to take judicial notice of the terms of the plea agreement and judgment in Tillman's prior criminal case, their provisions lend no support to petitioner's claims that the ordered restitution pertained to his tax liability to the IRS or that his civil liability to the IRS has been resolved.  Rather, the plea agreement makes clear that the $120,000 in restitution pertains to "losses incurred by Ports America Baltimore, Inc.," rather than to any tax liability owed to the IRS.  ECF 44 ¶ 9.  Moreover, the plea agreement expressly states: "The Defendant understands that this agreement does not resolve any civil tax liability that he may have, and that this agreement is with the United States Attorney's Office, not with the [IRS, which] remains free to pursue any and all lawful civil remedies it may have."  *Id.* ¶ 10.  Further, the plea agreement provides that, "as a special condition of supervised release," Tillman will "use his best effort to execute a final and conclusive 'Closing Agreement' with the [IRS] . . . in order to resolve his tax liabilities for the years 2002-2006," and will "pay the [IRS] all additional taxes, interest and penalties which the [IRS] may determine that he owes for the tax years 2002-2006, pursuant to the aforesaid Closing Agreement."  *Id.*  The judgment in Tillman's criminal case contains nearly identical "Closing Agreement" provisions, as "additional conditions" of his supervised release.  *See* ECF 74.[9]

However, the period of 2002-2006 addressed in the plea agreement and judgment largely precedes the one at issue in Agent Johnson's investigation.  More important, Tillman points to no

---

[9] Specifically, the judgment (ECF 74) provides that, among other "additional conditions" of supervised release, Tillman must "use his best effort to execute a final and conclusive 'Closing Agreement' with the [IRS] . . . in order to resolve his tax liabilities for the years 2002-2006." *Id.* at 4.  He must also "pay the [IRS] all additional taxes, interest and penalties which the [IRS] may determine that he owes for the tax years 2002-2006, pursuant to the aforesaid Closing Agreement." *Id.*

agreement or restitution order resolving his civil tax liability that might lend credence to the unsupported assertions found in the Petition to Quash.

In any event, to resolve the issues presented here, it is unnecessary to decide whether judicial notice is warranted or to rely on materials from petitioner's criminal case.  This is because, on their face, petitioner's assertions plainly fail to meet the "heavy burden of disproving the actual existence of a valid civil tax determination or collection purpose."  *Alphin*, 809 F.2d at 238 (citing *LaSalle Nat'l Bank*, 437 U.S. at 316).

### III.  Conclusion

For the foregoing reasons, the Petition to Quash (ECF 1) is denied, and the Government's Motion to Enforce (ECF 6) is granted.  An Order implementing this ruling follows.

Date: April 8, 2014                                       _____/s/_____
                                                                         Ellen L. Hollander
                                                                         United States District Judge